UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the Extradition of

Zhenly Ye Gon                                                                                  Misc. No. 08-596 (JMF)

MEMORANDUM OPINION

Currently pending and ready for resolution is the <u>United States' Motion and Memorandum of Law in Support of Detention</u> ("Mot.") [#53]. For the reasons stated herein, the government's motion will be granted.

BACKGROUND

Respondent Zhenly Ye Gon is a naturalized Mexican citizen who was born in China. <u>Complaint for Arrest with a View Towards Extradition</u> (18 U.S.C. § 3184) ("Compl.") at ¶ 23. On July 23, 2007, he was arrested in Maryland on a federal drug complaint issued by this court. Mot. at 1. The respondent was then indicted in the United States on the charge of conspiring to aid and abet the manufacture of 500 grams or more of methamphetamine, with the knowledge that it would be imported into the United States, in violation of 21 U.S.C. §§ 959 and 963, and 18 U.S.C. § 2. <u>Id.</u> Subsequently, the Mexican government formally requested the respondent's extradition pursuant to the treaty between the United States and Mexico, so that he could face numerous charges including violations of Mexican organized crime, drug, firearms and explosives, and money laundering laws. Compl. ¶ 5. On August 28, 2009, the indictment against the respondent was dismissed with prejudice. The government has now moved for the respondent's detention pending the resolution of the Mexican government's request for extradition.

DISCUSSION

I.      <u>Legal Standard</u>

Unlike the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, which identifies various criteria for the issuance of bail in criminal cases, the federal statute governing the extradition of foreign

nationals from the United States to their home countries, 18 U.S.C. § 3184 *et seq.*, makes no mention of bail.  See Beaulieu v. Hartigan, 554 F.2d 1, 2 (1st Cir. 1977) ("Unlike the situation for domestic crimes, there is no presumption favoring bail [in extradition cases]."). Accord United States v. Russell, 805 F.2d 1215, 1216 (5th Cir. 1986).  Rather, there is a strong presumption *against* the granting of bail in extradition cases.

In the 1903 seminal case of Wright v. Henkel, 190 U.S. 40 (1903), not only did the Supreme Court state plainly that "bail should not ordinarily be granted in cases of foreign extradition," id. at 63, but it also discussed the incongruity between the granting of such relief in the face of an extradition treaty to which the United States was a party:

> The demanding government, which has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil[l] if release on bail were permitted.  The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.  *And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination.*

Id. at 62 (emphasis added).  See also United States v. Leitner, 784 F.2d 159, 161 (2nd Cir. 1986) (noting the added importance of detention where the individual whose extradition is sought was charged with acts of terrorism).  The Court did not, however, preclude the possibility that bail would ever be granted in an extradition case and indicated that circumstances might arise that would warrant such relief: "We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the *special circumstances*, extend that relief." Id. at 63 (emphasis added).

Six years later, in the case of In re Mitchell, 171 F. 289 (S.D.N.Y. 1909), Judge Learned Hand noted that bail in extradition cases was appropriate "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." Id. at 289.  In

2

that case, the court found the existence of special circumstance where the individual being held was also party to a civil suit which implicated his entire fortune. Id. Judge Hand, however, limited the period of release to the duration of the civil suit. Once the civil suit was concluded, the respondent was to be remanded to jail. Id. at 290.

In United States v. Kin-Hong, 83 F.3d 523 (1st Cir. 1996), the district court concluded that there were conditions of release that would adequately assure the appellee's presence at future proceedings. Id. The court of appeals reversed, however, and concluded that, while other courts had granted bail where it appeared likely that the prisoners would be able to successfully challenge their extraditions, there was no clear indication of the detainee's ultimate success in challenging the United Kingdom's request to have him extradited to Hong Kong. Id. The appellate court was similarly unpersuaded by the detainee's argument that the attending complexity in legal issues, namely the change in sovereignty over Hong Kong, would result in a delay of the extradition proceedings. Id. at 525. The court therefore concluded that there were no special circumstances which warranted the detainee's release. Id.

Special circumstances were found one year later in United States v. Kirby, 106 F.3d 855 (9th Cir. 1997). In that case, the court of appeals upheld the district court's finding of special circumstances relating to three Irish citizens who had escaped from a Belfast jail. Id. at 857. Affirming the lower court's finding that the three individuals had experienced unusual delay in the appellate procedure and that another escapee had been granted bail were special circumstances justifying bail, the court also noted the uniqueness of the case itself, one involving the tensions between Protestants and Catholics in Northern Ireland, as support for its affirmation of the lower court's ruling. Id. at 863, 864-65.

Finally, in the recent decision of United States v. Ramnath, 533 F. Supp. 2d 662 (E.D. Texas 2008), the court reviewed a request for bail from a citizen of India currently residing and practicing medicine in Texas, whose extradition was sought by the United Kingdom for the involuntary manslaughter of a patient in England. Id. at 664. The case involved a physician who

3

was charged with manslaughter because she treated a patient "with a bolus of adrenaline over the objection of two more senior physicians and a senior, experienced nurse on the critical care team, without obtaining prior permission from the attending physician with ultimate medical authority in the case and in disregard of established hospital protocol for administering adrenaline." Id.  The court found that the respondent had substantial roots in the community, that there were reasonable conditions that could prevent her flight and that ultimately a jury would probably conclude that the doctor's conduct "did not constitute a *crime against the state* as opposed to a matter of *civil compensation* to her patient." Id. at 668 (emphasis in original).

These cases therefore establish how special the circumstances must be before a federal court will even consider admitting a person whose extradition is sought to bail.  There are no such special circumstances here.  To the contrary, the respondent presents a significant risk of flight.

II.     Analysis

   A.     Risk of Flight

Citing throughout its brief the strong presumption against bail in extradition cases, the government argues that the respondent also poses a serious risk of flight. Mot. at 2, 8. Specifically, the government cites the respondent's Chinese citizenship,[1] significant ties (both personal and professional) with China, lack of significant ties with the United States, and the likelihood that, in addition to the almost incomprehensibly large quantities of cash seized from the respondent's Mexican home, the respondent has other vast resources available to him. Id. at 8-9.

The respondent counters with several arguments.  First, he argues that he is not a flight risk as he "has no travel documents and no funds or other means with which to make good his purported flight." Ye Gon's Opposition to Government's Motion and Memorandum of Law in Support of Detention ("Opp.") at 4.  The respondent also cites to the fact that he entered the

---

[1] As noted above, respondent is also a naturalized Mexican citizen.

United States lawfully several months before there were criminal cases in Mexico and the United States and that he had in fact filed an application for asylum in the United States one year before the extradition proceedings were initiated. Id.

Despite the respondent's protestations to the contrary, he most definitely poses a flight risk. In addition to the arguments put forth by the government, the respondent is accused of engaging in money laundering according to the facts cited in the Mexican arrest warrant. When the respondent's home in Mexico City was searched, authorities seized $205,564,763 in US dollars, $17,306,520 in Mexican Pesos, €201,460 in Euros, $113,260 in Hong Kong dollars, and $180 in Canadian dollars. An individual who had in excess of $200 million U.S. dollars in cash secreted in his home is someone who clearly possesses the means and motive to flee this jurisdiction and thus presents a clear risk of flight.

B.  Special Circumstances

The burden of proof rests with the respondent to identify those extraordinary circumstances which warrant his release on bail. Ramnath, 533 F. Supp. 2d at 666; United States v. Taitz, 130 F.R.D. 442, 444 (S.D.Cal. 1990). To that end, the respondent points to the fact that he has been in "extremely harsh solitary confinement" for over two years and to the fact that the government deliberately delayed the resolution of the criminal proceedings against him. Opp. at 3-4.

It must be recalled that any delay encountered in the extradition matter is derivative of the delay in the criminal case that has now been dismissed. The extradition matter has always awaited the resolution of the matter before Judge Sullivan, and the respondent never uttered a word of protest whenever the extradition matter was adjourned to await the result in the criminal case. Indeed, the respondent, while complaining of delay, has sought every adjournment of the extradition hearing since December, 2008.[2] It is not fair to complain of the delay he sought.

---

[2] Specifically, on December 12, 2008, the respondent moved to continue the extradition hearing until the conclusion of the criminal proceedings [#25]. The respondent then moved to continue the hearing on March 11, 2009 [#38], June 18, 2009 [#65], and most recently on September 14,

Simply put, there has been no delay whatsoever in the extradition matter that occurred because of the government. The converse is true; the respondent's prior counsel sought a delay of the extradition matter pending the result in Judge Sullivan's case, and his new counsel have since moved for two continuances of the hearing over the government's objection. That history of the respondent's delaying the hearing over the government's objection is a hardly a special circumstance warranting admitting him to bail.

It can be said, in hindsight, that, had the government not prosecuted the respondent itself but had sought only his extradition, this matter would certainly have been concluded by now. But, neither Judge Sullivan nor any one else has ever suggested that the government's independent prosecution of the respondent was utterly without basis and initiated because of some evil ulterior motive. All that can be said is that Judge Sullivan was troubled by what he considered to be a failure to make certain disclosures and that the United States decided to abandon its prosecution of the respondent in favor of his extradition. A judicial finding that the government did not do something it was supposed to and the government's abandonment of the respondent's prosecution are not, in my view, special circumstances that would justify admitting this respondent to bail. Stated another way, that the government abandoned its prosecution of the respondent after a particular judicial finding of government dereliction does not trump the obvious treaty obligation the United States has to Mexico to surrender a fugitive to it upon Mexico's demand, a demand that in my view would be seriously jeopardized if the respondent were to be released and flee from the jurisdiction.

## CONCLUSION

The charges pending against the respondent in Mexico–violations of organized crime laws, manufacturing of illegal drugs, possession of illegal firearms and explosives, and money laundering laws–are indeed formidable and the items seized from secret caches within the

---

2009 [#71].

respondent's Mexico City home and within one of his factory offices equally so.  Any individual who is facing serious jail time if convicted and who has at his disposal over $200 million U.S. dollars in cash has both the motive and means to flee this and the Mexican government's jurisdiction.  Furthermore, as I have just explained, I cannot find that the circumstances attending the dismissal of the government's case against the respondent are special circumstances that would warrant permitting this respondent to be admitted to bail in light of the significant risk that the United States would be unfaithful to its treaty obligation to surrender the respondent to Mexico because the respondent would have fled.

     The government's motion will be therefore be granted and the respondent will continue to be held without bond pending his extradition hearing.  An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE