UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the Extradition of

Zhenly Ye Gon                                                                            Misc. No. 08-596 (JMF)

**MEMORANDUM OPINION**

**Background**

On May 13, 2009, the Court issued a Memorandum Opinion in which it denied respondent's request for discovery.[1] In the Matter of the Extradition of Zhenly Ye Gon, 613 F. Supp. 2d 92, 100-03 (D.D.C. 2009). In that opinion, I concluded that extradition could not be conditioned upon discovery from Mexico, the demanding state; any "right" to discovery could at most extend to discovery from the United States itself. Id. at 101. I nevertheless reviewed each of the discovery demands made and concluded that respondent's "demands for discovery would fail even if this Circuit were to ultimately conclude that limited discovery from the United States itself may be permitted in an extradition matter." Id.

At a hearing held on September 17, 2009, I directed the parties to submit supplemental briefs addressing "whether, in an extradition hearing, the traditional requirement of producing exculpatory evidence flowing from the Supreme Court's decisions in Brady[2] and Giles vs. Maryland[3] applies." Transcript of Sept. 17, 2009 Hearing at 32.

---

[1] The request for discovery was made by letter dated December 19, 2008, and was attached to a Notice of Filing, which appears as [#29] on the docket.

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] Giles v. Maryland, 386 U.S. 66 (1967).

In his supplemental submission, respondent, despite my request, protests that "he has not made a Brady request for exculpatory evidence, but rather requested information in the government's possession, which could negate probable cause in this matter." Supplemental Memorandum in Support of Respondent's Request for Discovery [#79] ("Supp. Mem.") at 7. He cites to authority in other Circuits that indicates that courts have an inherent power to order discovery and insists that this Court should exercise that power as to information in the possession of the United States itself. Id. at 11. Relying on such an inherent power, he seeks "all information in the government's possession regarding the witnesses identified as having 'recanted' in [respondent's] criminal case," as well as the following:

    a.    Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports, related to "Emerald Import & Export Company," referred to by Mr. Diaz Lopez in his affidavit and/or the supporting documents submitted therewith;

    b.    Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports, related to any and all alleged employees of Mr. Ye Gon referenced by Mr. Diaz Lopez in his affidavit and/or the supporting documents submitted therewith;

    c.    Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports related to any and all of the "shipments" referenced by Mr. Diaz Lopez in his affidavit and/or the supporting documents submitted therewith;

    d.    Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports related to the use and/or shipment of cash by Mr. Ye Gon or Unimed referenced by Mr. Diaz Lopez in his affidavit and/or the supporting documents submitted therewith;

    e.    Any and all information, including, but not limited to,

>   documents, witness statements, audio or visual evidence, and/or reports related to the investigation of Mssrs. [sic] Diaz Lopez and/or Ramirez Mandujano by either Mexican or United States law enforcement, including the Mexican Attorney General's Office or any agency, department or office of the United States government, including the United States Embassy in Mexico;
>
> f.  Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports related to any investigation of corruption in SIEDO or the PGR by either Mexican or United States law enforcement, or other governmental departments, agencies or offices, including the United States Embassy in Mexico;
>
> g.  Any and all information, including, but not limited to, documents, witness statements, audio or visual evidence, and/or reports related to any witness against Mr. Ye Gon who has either recanted or changed their statements and who were not previously identified by the government.

Supp. Mem. at 8-9.

Thus, respondent abjures any reliance on the government's obligation imposed by <u>Brady</u> to produce exculpatory evidence and therefore does not submit any argument as to why this obligation should be imposed on the United States in an extradition proceeding. He relies instead on an inherent power to order discovery.

**The Questionable Inherent Power to Order Discovery**

I have already concluded, and respondent agrees, that any inherent power to order discovery cannot extend to conditioning extradition upon discovery from the demanding state. <u>In the Matter of the Extradition of Zhenly Ye Gon</u>, 613 F. Supp. 2d at 101. As for discovery from the United States, I have cautioned that courts that find such inherent authority to exist have not grappled with how that authority can co-exist with a statute that takes the form of Federal Rule 1(a)(5)(A) of Criminal Procedure, which expressly prohibits the discovery permitted in a

criminal case in cases involving "the extradition and rendition of a fugitive." Fed. R. Crim. P. 1(a)(5)(A) (quoted in <u>In the Matter of the Extradition of Zhenly Ye Gon</u>, 613 F. Supp. 2d at 101). As the government forcefully points out, the case law that presupposes the existence of such an inherent authority limits its reach to those admittedly rare situations where its exercise is essential. <u>Government's Opposition to Supplemental Memorandum in Support of Respondent's Request for Discovery</u> ("Opp.") at 15. Even in such situations, I remain as troubled now as I was in my May opinion about the court's exercising of an even narrowly circumscribed inherent authority without even considering the Federal Rule of Criminal Procedure that prohibits it.

  As no one is suggesting a constitutional right to discovery in criminal cases, let alone extradition cases, the only source of authority to grant discovery in a criminal case is found in Rule 16 of the Federal Rules of Criminal Procedure. It seems to be the case, however, that the sovereign, asserting its unquestioned power over its relations with other nations and rules of procedure applicable in its courts, has decreed that the only source of authority that permits discovery in the context of a criminal case does not apply to extradition proceedings. <u>See</u> Fed. R. Crim. P. 1(a)(5)(A). To suggest the existence of an inherent authority to order discovery in an extradition proceeding would be to permit courts to do exactly what Congress has expressly forbidden.

  Moreover, respondent's new demands for discovery are remarkably broad, despite his protestation that he seeks only evidence that would negate probable cause. Supp. Mem. at 12. Additionally, whether he concedes it or not, even those cases that posit an inherent authority to order discovery apply it sparingly. <u>See, e.g.</u>, <u>Quinn v. Robinson</u>, 783 F.2d 776, 817 n.41 (9th Cir. 1986); <u>First Nat'l City Bank of New York v. Aristeguieta</u>, 287 F.2d 219, 226 (2d Cir. 1960),

4

vacated as moot, 375 U.S. 49 (1963). In the case at bar, there is a complete disconnect between the breadth of the discovery sought and the only question presented: whether there is probable cause to believe that respondent committed the crime charged. It is simply inconceivable that respondent needs all of the information he requested, specified above, simply in order to negate probable cause. If respondent counters that he needs all of this information to find what is useful, then we are back to where we started in May: respondent wants to throw out a net twice the size of his boat in the hopes that he might catch a fish. The cases he relies upon do not authorize discovery of such wide breadth.

### The Obligation to Produce Evidence That Negates Probable Cause

Ironically, while the United States addresses the question I raised at the hearing and speaks persuasively to why it has no obligation to provide exculpatory evidence, respondent protests that he is not relying on any such obligation for the discovery he seeks. Since he does not, it might appear there is no reason to address that issue. Nevertheless, respondent does cite to authority that imposes such an obligation, and I do not wish to leave any loose ends. Thus, I will address the question I posed and explain why I believe that the government has an obligation to produce exculpatory evidence, although its obligation is a narrow one.

As I have previously noted, in the ordinary extradition case, the United States has no information other than what has been provided by the demanding state. Independent prosecution by the requested state is rare, and it appears that there are only two reported cases in American legal history in which such a prosecution has occurred. In both cases, the Sixth Circuit Court of Appeals held that the government did have an obligation to turn over information that "would undercut a finding that there was probable cause" to believe that the petitioner committed the

offense with which he was charged by the requesting state.  See In re Extradition of Drayer, 190 F.3d 410, 415 (6th Cir. 1999); Demjanjuk v. Petrovksy, 10 F.3d 338 (6th Cir. 1993), cert. denied, 513 U.S. 914 (1994).

The government dismisses this authority as being based on flawed legal theory, as having never been followed, and as having been contradicted by precedent in this Circuit, which holds that the government's obligation to turn over exculpatory evidence does not apply to proceedings that do not determine guilt or punishment.  See Opp. at 9.  The authority has not been followed, but no other courts have even confronted this issue.  Furthermore, while cases can be found that stand for the proposition that the government's obligation to produce exculpatory evidence does not apply to a particular proceeding, these courts have not grappled, as I must, with the command of the Fifth Amendment.  Surely, a man who is imprisoned to await extradition has been deprived of his liberty, and that deprivation is without due process of law when the government conceals information that would negate the probable cause offered by the demanding state.[4]  In such a situation, the determination that due process is lacking is founded on the same theoretical basis as the Supreme Court's decision in Brady, namely that a prosecutor may not be the architect of an unfair proceeding.  It is inconceivable to me that the prosecutors who appear before me on a daily basis would keep from me, at a preliminary hearing, evidence that shows that the defendant could not be guilty of the crime charged merely because the preliminary hearing focuses on probable cause, instead of on the defendant's guilt or innocence. Rather, I am certain that the prosecutors appearing before me would disclose the evidence even

---

[4] See United States v. Kin-Hong, 110 F.3d 103, 106 (1st Cir. 1997) (finding that "[t]here is the ultimate safeguard that extradition proceedings before the United States courts comport with the Due Process Clause of the Constitution.").

though the proceeding is preliminary and the defendant's ultimate guilt or innocence will not be resolved at that hearing.  For example, in the preliminary hearing of an accused bank robber where the United States has fingerprint evidence on a note that shows that the defendant could not be the bank robber, the mere fact that the proceeding will not resolve the defendant's guilt or innocence does not mean that the United States is free to conceal that evidence from the defendant.  Rather, the United States must turn it over.  Similarly, if a defendant is accused of selling drugs, and the United States later learns that the white powder substance seized from the defendant is actually baking soda, the United States has an obligation to either share that information with the defendant or dismiss the case, even though it may be the defendant's initial appearance and a probable cause hearing has not yet been held.  Instead of focusing on the nature of the proceeding, I am focusing on what the prosecutor, as a government representative, may or may not do.  As the Supreme Court stated in Brady: "An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in its courts.'" Brady, 373 U.S. at 87.  The prosecutors in this case are simply too experienced and conscientious to argue that they have the "right" to keep from respondent, and ultimately from me, evidence that would negate the demanding state's showing of probable cause.  I must therefore insist that the United States provide respondent with any evidence within its possession that would negate the showing of probable cause that the Mexican government has offered.

    I appreciate that the line between evidence that would negate probable cause and exculpatory evidence is difficult to draw.  Historically, the two concepts developed differently and have served different ends.  The obligation to produce exculpatory evidence flows from the

due process clause and applies to the ultimate determination of guilt or innocence. The obligation to establish probable cause, on the other hand, is imposed by the United States as a limitation on the power of another sovereign to extradite a person from the United States. The commands of the due process clause are, in my view, satisfied when the government, having conducted an independent prosecution, searches the materials it collected in that prosecution and surrenders to the respondent evidence it has discovered that would negate the probable cause offered by the requesting state. It would be the kind of evidence that would convince any reasonable person that, despite the showing by the foreign government, there is no reasonable likelihood that the crime charged was committed or that the person charged committed it.

I appreciate that this criterion may be more difficult to apply than to state. I expect, therefore, the government to resolve doubts in favor of the respondent and to submit to me *in camera* any evidence that it believes might meet this criterion. Evidence that does meet it, i.e., tends to negate probable cause as I have just defined it, should be turned over forthwith.

## CONCLUSION

All of respondent's legal objections to the extradition having been rejected, a hearing date is set for February 2, 2010 at 9:30 a.m. in Courtroom 6. At that time, the Court will assess whether the submission by the Mexican government, as supplemented by the United States with any of the evidence I am ordering to be provided, establishes probable cause to believe that the respondent committed the crimes charged by the Mexican government.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE